nitely or not, I am not able to say. At present, the general fund is only $200 or $300, and not much more is in immediate prospect. I think, therefore, that it would be more equitable to charge these fees now against the fund in hand, but to state distinctly, that if a general fund of sufficient size should hereafter be collected, and if it should appear, upon further consideration, that such general fund is properly chargeable with any portion of these fees, the proper adjustment may then be made. If it should appear that the general fund should pay part of these charges, the proper proportion could then be diverted from that fund and restored to the debenture holders.

A decree may be drawn in accordance with this opinion.

---

### THE W. C. KIRK.

#### (District Court, D. New Jersey. January 23, 1906.)

COLLISION—VESSELS AT WHARF.

> While a barge 20 feet wide was discharging on one side of a creek 40 feet wide, a canal boat 17 feet wide was placed alongside to discharge upon the other side, and left during the night, and when the tide receded the vessels sagged together, and the barge was injured. *Held,* that the canal boat should not have been left in such close proximity to the barge, and was in fault; also that the barge was in fault because during the afternoon and after the canal boat was placed she moved farther up, where the stream was narrower, which brought her closer still to the other vessel.

In Admiralty. Suit for collision.

David O. Watkins and J. Boyd Avis, for libelants.

Francis C. Lowthorp, for claimant.

LANNING, District Judge. The libelants' barge Idella, loaded with crushed stone for the city of Woodbury, was tied up to the libelants' wharf in Woodbury creek at the city of Woodbury, for the purpose of discharging her load, early on the morning of April 24, 1903. She was 80 feet long and about 20 feet in width. The creek at the point where the barge was moored is only 40 feet in width. During the day the canal boat W. C. Kirk, composed of two boxes—a bow box and a stern box, each loaded with coal—was brought up the stream. Before reaching the place where the Idella was located the two boxes were separated and the stern box taken in by the side of the Idella and tied to the wharf on the opposite side of the stream and unloaded, without accident. This box was then removed and the bow box of the canal boat brought up and tied to the wharf opposite the Idella. The Idella and the bow box of the W. C. Kirk remained at their respective wharves during Friday night. The bow box was 17 feet in width. As the tide receded early Saturday morning the Idella and the bow box of the W. C. Kirk came into contact, and the Idella was injured by the pinching she received.

The proofs satisfy me that the W. C. Kirk ought not to have been taken in by the side of the Idella and left there during the night. The two boats were very close together at high tide, and those in

charge of the canal boat should have foreseen the probability of accident as the tide receded. Those in charge of the canal boat were clearly guilty of negligence. But the proofs also satisfy me that late on Friday afternoon the Idella was moved by the libelants' employés several feet farther up stream than she had previously been. By this movement the Idella was taken into a narrower part of the stream, and therefore closer to the W. C. Kirk. At that time the employés engaged on the W. C. Kirk were unloading the bow box, but there could have been no reasonable expectation on the part of those in charge of the Idella that the bow box would be unloaded in time to remove her from her place at the wharf before the next day. This movement on the part of those in charge of the Idella was consequently an act of negligence. Both parties being guilty of negligence, there must be a division of damages.

There will be a reference to a commissioner for the purpose of ascertaining the damages. The final decree, when entered, will be for one-half of the damages proven.

---

### BLACK v. WIEDERSHEIM.

(Circuit Court, E. D. Pennsylvania. January 25, 1906.)

#### No. 65.

CORPORATIONS—MORTGAGE TRUSTEE—LIABILITY FOR BREACH.

> A trustee in a corporation mortgage, which provides that he shall not "be liable or responsible for any other cause, matter or thing except his own willful and intentional breaches of the said trust herein expressed and contained" is not liable to bondholders for omissions to act through mistake or misconception of his duty.

On Motion to Take Off Nonsuit.

Horace L. Cheyney, for plaintiff.

Henry La Barre Jayne, Charles Biddle, and Birney & Woodard, for defendant.

J. B. McPHERSON, District Judge. This is an action of trespass, brought against the trustee under a corporation mortgage by a bondholder, charging the trustee with several breaches of duty, whereby the value of the plaintiff's bonds has been altogether lost. A compulsory nonsuit was entered at the trial for reasons that are not stated on the stenographer's notes, but his omission is unimportant, for I remember distinctly having reserved the right (although the reservation was probably superfluous) to consider any other reason that might be afterwards urged in support of the nonsuit. At that time I had not examined the mortgage, but I find in it now a provision that in my opinion makes it unnecessary to discuss any other point in the case. The concluding paragraph of the mortgage is as follows:

> "And it is hereby expressly covenanted and understood by and between the said parties to this indenture, their successors, heirs, executors, administrators and assigns, that this trust is accepted upon the express condition that the said trustee, his heirs, executors, administrators and assigns, shall not